UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL J. BAJOR,                              No. 08-12401

        Plaintiff,                         District Judge Victoria A. Roberts

v.                                              Magistrate Judge R. Steven Whalen

WAL-MART CORPORATION,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendant's Motion for Summary Judgment [Docket #24], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED, and that the complaint be dismissed with prejudice.

**I.    FACTS**

Plaintiff originally filed his complaint in the Circuit Court for Macomb County, Michigan. On June 5, 2008, Defendant removed the case to this Court. The complaint alleges that Defendant Wal-Mart, Plaintiff's former employer, fired him for racially discriminatory reasons, in violation of Title VII of the Civil Rights Act of 1962, 29 U.S.C. § 2000e, *et seq.* ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq.* ("ELCRA").[1] After he was interviewed by Ernest Robinson, an assistant manager at Wal-Mart's Warren, Michigan store, Plaintiff was hired as a

---

[1] Plaintiff states that he is no longer asserting a claim under Title VII. *Plaintiff's Response to Defendant's Motion for Summary Judgment*, ¶ 2 [Docket #26]; *Plaintiff's Deposition,* 211-12. *See also Plaintiff's Motion to Remand* [Docket #6] ("Plaintiff is not suing under Title VII, but rather under Michigan's Elliott Larsen Civil Rights Act").

-1-

"maintenance associate." *Plaintiff's Deposition,* Exhibit A to Defendant's Brief, 125. Mr. Robinson, who is African-American, recommended Plaintiff for the position. *Affidavit of Ernest Robinson*, Defendant's Exhibit C.[2] Plaintiff began work on February 14, 2007, and was fired on October 9, 2007. *Id*. He worked the overnight shift. *Plaintiff's Deposition*, 140.

Plaintiff underwent a two-day orientation period with Wal-Mart, which included information about disciplinary policies and the Defendant's progressive discipline policy, known as "Coaching for Improvement." The orientation included video presentations, including an "anti-union" video. *Id.*, 144-45. In addition to this orientation, Plaintiff several times consulted an on-line policy information resource known as the "WIRE." *Id*., 152. At his deposition, Plaintiff testified that he understood that "[i]f you're clocked in, you're expected to be on the floor working." *Id*. He also understood that Wal-Mart classified some conduct as "gross misconduct," which would not be subject to progressive discipline, but would result in immediate termination. As Plaintiff put it, "If you do it, you're going to get fired." *Id*., 153-55.

Plaintiff acknowledged that "theft of company time" would constitute gross misconduct. He acknowledged that Defendant's policy manual listed examples of gross misconduct, the first being "intentional misuse of company time, claiming pay for time not worked." *Id*., 168, 170-71. *See also Declaration of John Johnson*, ¶ 13, Defendant's Exhibit A.

In his declaration (Defendant's Exhibit C), Assistant Manager Ernest Robinson states that "[o]n October 7, 2007, I suspended Mr. Bajor after I had reviewed video

---

[2] However, Robinson states that although he suspended the Plaintiff on October 7, 2007, he did not make the decision to fire him. *Robinson Declaration*, ¶ 9.

surveillance which showed that Mr. Bajor had been sitting in the Tire Lube Express lounge during his overnight shift on October 5. I recall that the video surveillance showed Mr. Bajor was actually sleeping in the TLE lounge." *Robinson Declaration*, ¶ 7.[3] At his deposition, Plaintiff conceded that on October 5, 2007, during his shift, he sat down in the TLE lounge three different times, for a total of about an hour. He admitted that during those times, he read some magazines and rested. He said that he closed his eyes, but probably did not sleep. *Plaintiff's Deposition*, 176-77. He admitted that this was an unauthorized break, taken in addition to his lunch and his two allotted 15-minute breaks, and that he got paid for the time he was "loafing" (Plaintiff's words) in the lounge. He also conceded that his conduct violated company policy, but disputed that it constituted "theft of time." *Id.*, 178-180.

Nevertheless, Plaintiff alleged in his complaint and in his deposition that the charge of "theft of company time" was a pretext for his firing. He testified that in his view, the true reasons were that the sales were down, requiring the store to get rid of someone, and given Wal-Mart's diversity policy, the Defendant terminated Plaintiff, a white male, in order to meet its diversity goals. *Id.*, 256. He stated that based on "information [he] found on the internet," a Wal-Mart manager's bonus can be reduced by up to 15% if he does not meet his diversity goals. Therefore, he claims, the assistant managers have incentive to meet those goals by firing him and hiring African-American employees. *Id.*, 241. When asked at his deposition what evidence he had to support his claims, he referred to (1) Wal-Mart's diversity policy; (2) his claim that there were "so many African-Americans working in this store in an overwhelmingly white

---

[3] Johnson's Declaration (Defendant's Exhibit B), at ¶ 30, contains a minute-by-minute description of what was seen on the surveillance tape.

neighborhood; and (3) the comparatively lenient treatment given to similarly situated African-American employees. *Id*., 242. As to the latter claim, however, he acknowledged that he did not know of any other employees who engaged in similar conduct, who took unauthorized breaks for significant periods of time, or who were "on the clock" but not working for significant periods of time, who were not terminated. *Id*. 253.

John Johnson states that prior to January 12, 2008 (thus during the period of Plaintiff's employment), his store (No. 2259) was located in Warren, Michigan, but is now located in Sterling Heights, Michigan. *Johnson Affidavit*, Defendant's Exhibit B, ¶ 4. Johnson was the store manager at the time Plaintiff was fired. *Id*., ¶ 6. Attached to his Declaration as Exhibit B(4) is Wal-Mart's "Payroll Integrity Policy," which prohibits employees from falsifying payroll records by reporting false information regarding work hours. The policy states, "If it is determined that an Associate knowingly and intentionally deviates from this policy, s/he may be subject to immediate termination and will not be eligible for rehire."[4]

Johnson states that as manager, he made the decision to fire the Plaintiff. "Because I considered Mr. Bajor's behavior in the TLE lounge to be theft of Company time, I notified him that he was being terminated for that reason." *Johnson Declaration*, ¶ 31. Johnson states that on May 9, 2007, he fired another Maintenance Associate, Raymond Donald, for theft of company time, after he "confirmed that Mr. Donald had claimed time for an hour he had not worked." Mr. Donald was African-American. *Id*.

---

[4] The policy contained in Defendant's Exhibit (B)(4) also states that employment with Wal-Mart is on an at-will basis, "which means that either Wal-Mart or the Associate is free to terminate the employment relationship at any time for any or no reason, consistent with applicable law."

¶ 33.

In addition to Raymond Donald, Johnson states that both before and after Plaintiff's termination, he fired several other employees for theft of company time. Specifically, he mentions the following individuals who were fired:

Glenn Traylor, an African-American Unloader, was fired on February 3, 2007 "because he sat in the lounge while on the clock for forty-nine minutes and did not make it to his department until more than thirty minutes later." *Id.*, ¶ 38; Defendant's Exhibit B(16).

Lateaka Brown, an African-American Deli Associate, was fired on April 5, 2008 for theft of company time "when she punched in from lunch and then sat in the break room for an hour while on the clock." *Id.*, ¶ 39; Defendant's Exhibit B(17).

John Munson, an African-American Deli Associate, was fired on April 28, 2008 "when he stole company time by claiming pay for time he was asleep in the lounge." *Id.*, ¶ 40; Defendant's Exhibit B(18).

The Plaintiff claimed that another employee, Reginald ("Reggie") Allen came to work drunk, but was not disciplined. *Plaintiff's Deposition*, 55-56. However, Johnson states that he "never witnessed any conduct by Mr. Allen which would have led me to believe he was under the influence of alcohol." *Johnson Declaration*, ¶ 44. At his deposition, Plaintiff testified that he had no reason to believe that Johnson knew that Reggie came to work drunk. *Plaintiff's Deposition*, 263.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. DISCUSSION

This is a so-called "reverse discrimination" case, in which the Plaintiff, who is Caucasian, alleges that his termination was based on his race, that is, he was fired in order to effectuate Wal-Mart's goal of having more African-American employees.

An employment discrimination case under ELCRA is analyzed under the same framework as an analogous claim under Title VII. *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680, 690 (E.D. Mich. 1990); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 553-54 (W.D. Mich. 1988).

Plaintiff has offered no evidence that anyone in a decision-making position

expressly stated a desire to fire him or take any other adverse action based on race. Thus, Plaintiff's claim of "reverse" racial discrimination is based on circumstantial evidence. Indeed, he concedes as much. *Plaintiff's Deposition*, 257. In such case, the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003). Under that framework, the Plaintiff must present a prima facie case of unlawful discrimination. Once he has done so, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[5] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for discrimination.

In order to establish a prima facie showing of racial discrimination in such a case, the Plaintiff must introduce sufficient evidence that (1) he was a member of the protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas, supra,* 411 U.S. at 802. The last factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas, supra,* 411 U.S. at 802, 1824. However, this factor may take various forms, depending upon the facts and allegations of a particular case. *See*

---

[5]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, n.6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Hazle v. Ford Motor Company*, 464 Mich. 456, 463, n.6, 628 N.W.2d 515 (2001) ("the elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand"); *Shah v. General Electric Company*, 816 F.2d 264, 268-271 (6th Cir. 1987) ("However articulated, the significance of the prima facie case is that it permits an 'inference of discrimination...because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'") (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

### A. The Prima Facie Case

Defendant concedes that Plaintiff can establish the first and third elements of a prima facie case, that is, he is a member of a protected class, and he was subjected to an adverse employment action when he was fired. Defendant argues, however, that Plaintiff cannot show that he was qualified for his position, or that his termination occurred under circumstances giving rise to an inference of discrimination.

Defendant bases its argument as to the second element–the Plaintiff's qualifications–on the theory that Plaintiff was not meeting Wal-Mart's "legitimate expectations" when he claimed pay for time when he was not working. However, in *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 -661 (6th Cir. 2000), the Sixth Circuit soundly rejected this approach, and warned against using the purported non-pretextual reason for the adverse action–which would be relevant to the second stage of the *McDonnell Douglas* inquiry–to defeat a discrimination claim at the initial prima facie phase of the analysis:

> "In other words, when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a

court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff. The district court clearly failed to do this, improperly conflating the distinct stages of the *McDonnell Douglas* inquiry."

*Cline* held that the "qualified prong" of the prima facie analysis focuses on the plaintiff's employment record *prior to* the events that the employer cites as the legitimate reason for the adverse action. *Id*. at 662-63. *See also Peters v. Lincoln Electric Company*, 285 F.3d 456, 473 (6th Cir. 2003). Therefore, Plaintiff has satisfied the first three elements of a prima facie case.

The fourth element–that the Plaintiff was fired under circumstances giving rise to an inference of discrimination–is more problematic.

Plaintiff has simply not shown that employees outside his protected class, who committed the same or similar infractions, were not fired, or were treated more favorably. Indeed, between February 23, 2007 and April 28, 2008, John Johnson–the very same store manager who hired and fired Plaintiff–terminated four other employees, all African-American, for precisely the same offense, theft of company time. At his deposition, the Plaintiff conceded that he knew of no other employees who engaged in similar conduct who were not fired.[6] Those employees that Plaintiff claims were treated more leniently or were "coached for improvement" did not commit "gross misconduct," but rather violated policies that were subject to progressive discipline under Wal-Mart's Coaching for Improvement policy. Finally, Plaintiff has produced no evidence whatsoever, beyond his own speculation, that Mr. Johnson, who retained the power to hire and fire, had any

---

[6] Plaintiff also claims that an African-American employee named Mike Harrison was stealing from Wal-Mart as early as February of 2007, but was not terminated until months later. However, as Defendant explains in its Reply Brief [Docket #24], at p. 17, Harrison was terminated as soon as Wal-Mart had sufficient proof, including a video surveillance tape. Plaintiff was also fired after a review of a video surveillance tape. The Mike Harrison affair does not support a claim of disparate treatment.

knowledge that Reggie Allen came to work drunk.[7]

Nor has Plaintiff shown that after he was fired, he was replaced by an African-American employee. Plaintiff bases this claim on Defendant's answer to ¶ 29 of his complaint, where Wal-Mart says that "by early 2008 Defendant had two additional Maintenance Associates working third shift, both of whom are African American." But these two employees did not replace the Plaintiff. In his declaration of July 17, 2009, appended to Defendant's Reply Brief [Docket #28] as Exhibit K, John Johnson states, at ¶ 6, "Following Mr. Bajor's termination, the Store did not hire someone to replace Mr. Bajor. The Store redistributed his job duties among the existing Maintenance crew on the overnight shift." Rather, the two additional maintenance employees were hired well after Plaintiff was terminated, and after the Warren store where Plaintiff had worked was relocated to a larger facility in Sterling Heights. Mr. Johnson states, at ¶ 7 of his declaration:

> "By early 2008, the Store had hired two additional maintenance associates on third shift because it was moving to a new location and converting to a 24-hour Supercenter. The Supercenter opened on January 16, 2008, but Wal-Mart took possession of the new store in early December 2007. The relocation and conversion required Wal-Mart to hire a significant number of additional Associates, including third-shift maintenance associates, by mid-December 2007 to staff the new store."

Plaintiff has produced no evidence that after he was fired, he was replaced at the Warren store, by an African-American or anyone else. He has produced no evidence to rebut Johnson's sworn statement that his duties at the Warren store were redistributed among the remaining employees. *See Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining

---

[7] Plaintiff claimed that an employee named Guidoni told him that Reggie Allen "was drunk again" at work. However, Guidoni refused to provide Plaintiff with an affidavit attesting to that. *Plaintiff's Deposition*, 55-56.

employees does not constitute replacement."). Nor has he rebutted Johnson's statement that the Sterling Heights store–the "Supercenter"–hired additional (not replacement) employees, well after Plaintiff's termination, because of the size and expanded hours at that facility.

Finally, Plaintiff seeks to support an inference of discrimination based on spurious statistics and speculation that Wal-Mart managers have their bonuses reduced if they do not meet diversity goals. In terms of statistics, Plaintiff states in his own declaration [Docket #26] that when he worked at the Warren store, over 50% of the employees on his shift were black. In his complaint, he alleges that when he was terminated on October 9, 2007, "there were still more black employees on the 3rd shift than white." *Complaint*, ¶ 27. However, attached to Johnson's declaration of May 26, 2009, *Defendant's Brief*, Exhibit B(24) and (25), is a list of employees on the overnight shift in February, 2007 (when Plaintiff was hired) and a list of employees on that shift in October, 2007, when Plaintiff was fired. These documents show that there was a lower percentage of African American employees than Caucasian employees on Plaintiff's shift in October than in February. Defendant's Exhibit B(26), an Equal Employment Opportunity Report for the Warren store, shows that in 2007, that store employed more Caucasians than African-Americans. In short, Plaintiff's statistics–or more appropriately, his opinions as to the racial composition of the Warren store–are wrong.

Moreover, statistical evidence showing the relative percentages of minority and non-minority employees at Plaintiff's store–or at Wal-Mart in general–is not admissible to show that Plaintiff's termination was racially motivated. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 761 -762 (6th Cir. 2000) ("[T]he statistics relating to the percentage of minority supervisors at Adcom and other Leggett & Platt facilities were not relevant to

the issue of whether Adcom terminated Smith because of his race")(citing *Kier v. Commercial Union Ins. Cos.,* 808 F.2d 1254, 1258 (7th Cir.1987)).

As to the effect of Wal-Mart's diversity policy, both Johnson, the manager, and Robinson, the assistant manager, state in their declarations that they are not required to hire any certain number of minority employees, and have not had their bonuses reduced because of failure to meet diversity goals. But even if there were institutional pressure to increase minority representation in Wal-Mart's workforce, Plaintiff has offered nothing beyond speculation to show that this was a motivating factor in the decision to fire him.

I recognize that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Cline, supra*, 206 F.3d at 660, citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). But it is not a free pass either, and a plaintiff must present *something* other than speculation and opinion to raise an inference of racial discrimination. Mr. Bajor has offered nothing to support the fourth prong of the *McDonnell Douglas* prima facie evidence test, and for that reason, summary judgment for the Defendant is appropriate.

### B. Pretext

Assuming for the sake of argument that Plaintiff has established a prima facie case, the Defendant has proffered strong evidence that Plaintiff was fired for a non-discriminatory reason. The Plaintiff candidly admits that he violated company policy by claiming pay for an unauthorized break, during which time he was sitting down, resting, and reading magazines instead of working. The Defendant's written policies clearly designate this conduct as "gross misconduct," which subjects the offending employee to immediate termination. Other employees–including African-American employees–were fired for the same misconduct. The Plaintiff's belief that his conduct did not fall within

the category of "theft of time" has no support in, and indeed is contradicted by Wal-Mart's written policies, as well as the declaration of John Johnson, the store manager. In any event, the Plaintiff's interpretation of company policy is not relevant. He was an at-will employee who could be terminated for no reason at all, as long as the termination was not based on race or other illegal considerations. The Defendant has met its burden of showing a non-discriminatory reason for firing the Plaintiff.

Under the third prong of *McDonnell Douglas*, the burden now shifts back to the Plaintiff to show that the Defendant's stated reasons are pretextual. He may meet that burden by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the termination, or (3) that the proffered reason was not sufficient to motivate the discharge. *Smith v. Leggett Wire Co., supra*, 220 F.3d at 759 (citing *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)).

The Defendant's proffered reason for firing the Plaintiff–that he violated clear company policy regarding theft of time, thereby subjecting himself to immediate termination–is well grounded in fact, and the Plaintiff himself admits to the facts of the underlying misconduct. The Defendant's written policies speak for themselves.

The Plaintiff has not shown that the Defendant's proffered reason did not actually motivate the decision to fire him. At least four other employees at the Warren store who committed essentially the same misconduct were terminated by the same manager who fired the Plaintiff. Plaintiff's argument that he was fired in order to advance Wal-Mart's diversity goals, that is, to increase the number of black employees, is inconsistent with the fact that the other four employees who were terminated were all African-American.

Finally, Wal-Mart's written policies are clear that misconduct classified as theft of time, or claiming pay for hours not actually worked is considered gross misconduct,

punishable by immediate termination.  Under those policies, as applied to the Plaintiff and to other employees, the Defendant's proffered reason is sufficient to motivate the Plaintiff's discharge.

Immediately firing someone for a first offense of "goldbricking" seems harsh.  But this Court does not "sit as a super-personnel department" to second-guess the wisdom of an employer's standards. *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444, 462 (6th Cir.2004) (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 960 (8th Cir.1995)). The question is not whether Plaintiff's termination was disproportionate or unwise, but whether it was motivated by improper racial considerations. The Plaintiff has failed to support any genuine issue of material fact as to his claim of racial discrimination, and under the facts of this case, no rational trier of fact could find in his favor. *Simmons-Harris v. Zelman, supra*.  Therefore, summary judgment should be granted in Defendant's favor.

## IV.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #24] be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not

preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 16, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 16, 2010.

s/Gina Wilson
Judicial Assistant
